McDANIEL et al. v. STROUD.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

No. 380.

1. BANKRUPTCY—APPEAL FROM ALLOWANCE OF CLAIM—RIGHT OF CREDITORS TO APPEAL.

An appeal from an order of a court of bankruptcy allowing a claim, although taken in the name of other creditors, will not be dismissed where the trustee refused to allow the use of his name when the time for taking the appeal had so nearly expired that it was impossible to obtain an order requiring him to consent in time, and where the district court subsequently made an order that the appeal taken should be continued in the name of the trustee in connection with the appealing creditors.[1]

2. SAME—LIENS—MORTGAGE BY PARTNERSHIP.

A partner substituted his own note for a note which had been given by the firm and secured by a mortgage on real estate owned by the firm, and the latter note was assigned to him by the payee. Subsequently the firm was dissolved, and he transferred his interest in the firm property to his co-partner, but retained the note and mortgage, which he afterwards transferred to a third person to secure a loan made to his co-partner for an equal amount, and used in payment of debts of the part-

---

[1] Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

nership. *Held*, that the mortgage still remained a lien upon the property, and was not merged by the previous transfers, a mortgage under the state statutes being a security only, which creates no estate in the land; and that the holder was entitled to enforce the same against the proceeds of the mortgaged property when sold in bankruptcy proceedings against the partnership.

Purnell, District Judge, dissenting

Appeal from the District Court of the United States for the District of South Carolina.

H. J. Haynsworth and L. O. Patterson, for appellants.

Jos. A. McCullough, for appellee.

Before SIMONTON, Circuit Judge, and PURNELL and WADDILL, District Judges.

SIMONTON, Circuit Judge, and WADDILL, District Judge. The question at the threshold of this case is upon the motion to dismiss the appeal. Proceedings in involuntary bankruptcy were begun against A. M. Hayes and W. H. Murff, co-partners as Hayes & Murff, in the Western district of South Carolina. The petition was filed in the name of a large number of creditors. It was duly referred to a referee. By consent of all parties the respondents were declared bankrupts. A trustee was appointed, and creditors were called in. Among other claims was one by H. T. Stroud, who set up a claim for $1,000, with interest at 8 per cent. per annum from November 1, 1897, with 10 per cent. attorney's fees if the note be collected by process of law or through an attorney. The referee took testimony on this claim, among others, and made his report disallowing it. Exceptions were taken, and the matter carried before the district court. The court sustained the exceptions and allowed the claim. At the references and before the court the contest against the claim was conducted by the attorneys for the petitioning creditors. When this decree was filed (May 23, 1900), the attorneys for the petitioning creditors went to the trustee (James A. McDaniel), and requested permission on behalf of the petitioning creditors to appeal from this part of the decree in his name. The trustee at first said that he had no objection, but afterwards said that he wished to consult his counsel. Subsequently he informed the attorneys for the petitioning creditors that his counsel had advised him that the matter did not concern him, and he therefore declined to permit the appeal to be brought in his name. While this was going on, the 10 days within which an appeal could be brought had nearly expired. There not being sufficient time to go before the court and to get an order compelling the use of the name of the trustee in carrying up the appeal, the petitioning creditors on June 2, 1900, filed a petition for appeal in their own names, accompanied by assignments of error, and the appeal was allowed, the papers having been placed on file. On 16th July the district court, hearing the affidavit of the attorney for the creditors stating the facts above set forth, granted an order that the appeal heretofore taken by them in this case be continued in the name of J. A. McDaniel, as trustee, in connection with said creditors, and that the record be amended accordingly. At the

same time the creditors were required to file a bond for costs within 30 days. The appeal is here in that shape.

The motion to dismiss the appeal proceeds on two grounds: The petitioning creditors have no right to appeal. This right belongs to the trustee alone. This being so, no appeal in the name of the trustee was presented or allowed within 10 days after the entry of the decree. Section 25 of the bankrupt act. It will be noted that the trustee did not put his refusal on the ground that the decree, in his opinion, was correct, and that an appeal would be useless, resulting only in costs to the estate. He put it on the extraordinary ground that the matter did not concern him. Had the creditors a right to appeal? This depends upon the construction of the bankrupt act. The rule governing questions of this kind is stated by Taney, C. J., in U. S. v. Curry, 6 How. 106, 12 L. Ed. 363:

"It has been said that this objection is a mere technicality, and may be regarded rather as a matter of form than of substance. But this court does not feel authorized to treat the directions of an act of congress as it might treat a technical difficulty growing out of ancient rules of the common law. The power to hear and determine a case like this is conferred on the court by acts of congress, and the same authority which gives the jurisdiction has pointed out the manner in which the case shall be brought before us. And we have no power to dispense with any of these provisions, nor to change or modify them. And if the mode prescribed for removing cases by writ of error or appeal be too strict and technical, and likely to produce inconvenience or injustice, it is for congress to provide a remedy by altering the existing laws; not for the court. And as this appeal has not been prosecuted in the manner directed, within the time limited by the acts of congress, it must be dismissed for want of jurisdiction."

Under the bankruptcy act of 1867 an assignee who was dissatisfied with the allowance of a claim upon the bankrupt estate was given the right to appeal. The language of the act (Rev. St. 4980) is:

"And any supposed creditor whose claim is in whole or part rejected or any assignee who is dissatisfied with the allowance of a claim may appeal," etc.

It was held that this precluded the creditors from appealing in their own names, if a claim has been allowed. In re Troy Woolen Co., 24 Fed. Cas. 244 (No. 14,202); In re Joseph, 13 Fed. Cas. 1124 (No. 7,532); In re Place, 19 Fed. Cas. 790 (No. 11,200). The bankrupt act of 1898 is not so explicit. All that it says is, the trustees shall not be required to give bond when they take appeals or sue out writs of error.

The precise question now before this court has come up in two circuit courts of appeal. The court of the Eighth circuit, in Chatfield v. O'Dwyer, 42 C. C. A. 30, 101 Fed. 797, held that the act of 1898 must be construed as was the act of 1867, and that no one but the trustee can take up an appeal from a claim allowed; and that, if he will not do so of his own volition, the court will require him to do so at the instance of creditors. The circuit court of appeals for the Fifth circuit, on the other hand, in Re Roche, 42 C. C. A. 115, 101 Fed. 956, decided that the omission of the provision of the act of 1867 in the act of 1898 was intentional, showing the desire of congress to leave appeals under the general rule, and that any one affected or injured by a decree or judgment may appeal; and so held

in a case of a creditor dissatisfied with the allowance of another claim. The circumstances of this case make a strong inclination to follow this decision from the Fifth circuit. The trustee, for no other reason than that the matter did not concern him, so conducted himself as not only to deprive the dissatisfied creditors of the use of his name, but to prevent them from applying to the court for an order compelling this use. There is nothing in the record showing bad faith on the part of this trustee. The most that can be said of him is that he showed bad judgment. But if a trustee, by action like this, can defeat the effort of creditors to assert their rights, he not only assumes the functions of this court; he opens the door for great fraud. The decision in the Fifth circuit does not change or modify the act of congress. It construes it, and its construction is reasonable.

What was the effect and purpose of the order of July 16, 1900? It certainly was not the granting of another leave to appeal. The language of the order is "that the appeal heretofore granted in this case be continued in the name of J. A. McDaniel as trustee, in conjunction with the creditors." There is no question that the court would, in the first instance, have directed the trustee to allow the use of his name to conduct the appeal if it was thought necessary; and that authority it could exercise at any time, provided that no change was wrought in the status quo which could be detrimental to the appellee. In this case this certainly did not occur. If this appeal be dismissed on this ground, it will be for a mere defect of form. "A decree of the circuit court ought not to be reversed for a defect of form in the process which is amendable." Semmes v. U. S., 91 U. S. 21, 23 L. Ed. 193. An appeal in the name of an individual when the real appellant is a firm is amendable. Moore v. Simonds, 100 U. S. 146, 25 L. Ed. 590. It seems that this motion to dismiss the appeal should not be granted.

### As to the Merits.

H. T. Stroud presented a claim against the bankrupt estate as follows: A debt of $1,000, from November 1, 1897, and 10 per cent. thereon for counsel fees, interest on which was paid to March 4, 1898, secured by mortgage of a lot of land, with buildings thereon, in the city of Greenville. The history of this claim is this: The National Bank of Greenville held a note signed by A. M. Hayes and W. H. Murff, and also by Hayes & Murff, for $1,000, dated February 27, 1897, payable November 1, 1897, interest after maturity at 8 per cent., and 10 per cent. attorney's fees in case of collection through an attorney. This note was secured by the mortgage of this lot in Greenville. The lot had been conveyed to A. M. Hayes and W. H. Murff. When this note became due, it was not paid. On April 18, 1898, Murff executed to the bank a mortgage of a lot of land, his individual property, securing the sum of money due on this note, and thereupon the bank on that day assigned to Murff the original note. This assignment of the note carried with it the mortgage. Wright v. Eaves, 10 Rich. Eq. 582; Walker v. Kee, 14 S. C. 143. Murff's individual note was given in substitution of the original note. This being its object, the mortgage was not satisfied by the transaction. Burton v. Pressly, Chev. Eq. 1;

Carter v. Burr, 113 U. S. 740, 5 Sup. Ct. 713, 28 L. Ed. 1146. On April 17, 1899,—nearly a year after the note was assigned to him by the bank,—Murff assigned it to H. T. Stroud, to secure a loan of $500 to Hayes & Murff. On June 7th, Stroud made another loan to the firm of $500, and an additional assignment was made on the note to him. The firm of Hayes & Murff was dissolved February 26, 1899, Hayes assuming all the debts, and on March 1, 1899, Murff conveyed his interest in the lot held by him and Hayes to Hayes. This deed was recorded June 14, 1899. The money so lent by Stroud on these assignments was paid to Hayes by Stroud, and used by him in paying debts of the firm. The petition for bankruptcy was filed July 21, 1899. The act of bankruptcy (an assignment for benefit of creditors) was on June 14, 1899. As has been seen, the substitution by Murff to the bank of his individual note for that of Hayes and himself and the firm did not extinguish that note, nor did it satisfy the mortgage. Murff held these under assignment to himself until March, 1899, the date of his conveyance of his undivided interest in the lot of land to Hayes. This deed was not recorded until June 14, 1899. The statute of South Carolina as to the recording of deeds is this: In order to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, they must be recorded within 40 days from the date of their execution. If this be done, they give constructive notice, and are good as of the date of execution. If recorded after the 40 days, they give constructive notice, and are good from the date of their record. Rev. St. S. C. 1894, § 1968. When Stroud took this assignment of the mortgage, April 17, 1899, the deed conveying the title out of Murff was not on record, and it did not affect him. He was both a creditor and a purchaser for valuable consideration without notice. Jones v. Hudson, 23 S. C. 501.

Another point of view may be taken. Hayes held the title to property, the mortgage upon which was open on the record, and not satisfied in terms, apparently in the hands of Murff. When he received the money from Stroud, secured by the assignment of this mortgage, it was in fact and effect a reissue of the mortgage by him and bound him to all intents and purposes. Jones, Mortg. § 945; Sheddy v. Geran, 113 Mass. 378. And as it was for a present payment of cash, which cash was used in payment of his current debts, it was no fraud upon the bankrupt act, and was good.

It is urged that when the conveyance of his undivided half in the lot was made by Murff and Hayes, the whole title being then in Hayes, the mortgage merged. There was no merger of estates in the land, for in South Carolina a mortgage creates no estate. It is simply a security for a debt. Rev. St. S. C. 1894, § 1893; Warren v. Raymond, 17 S. C. 181. Nor does the conveyance of land to the mortgagor ipso facto satisfy the mortgage, if the intent to the contrary appear. Investment Co. v. Shaw, Fed. Cas. No. 10,556; Bradley v. Claflin, 132 U. S. 388, 10 Sup. Ct. 125, 33 L. Ed. 367. The general rule is that a mortgage will not be merged or extinguished by a subsequent conveyance by the mortgagor to the mortgagee of the mortgaged premises unless such seems to be the intent of the parties, and justice requires it. Case v. Fant, 3 C. C. A. 420, 53 Fed. 41. In the case at bar the

intent to preserve the lien of the mortgage is shown by the fact of its transfer with the full knowledge and consent of Hayes, and for his use and benefit. He, at least, cannot deny it; and, as no liens or rights of third persons had intervened as between these parties, the transaction holds. No error appears in the judgment of the district court.

PURNELL, District Judge (dissenting). A. M. Hayes and W. H. Murff were partners under the firm name of Hayes & Murff, and on February 26, 1899, the partnership was dissolved, and the business continued by A. M. Hayes. The firm owned the storehouse and lot where they did business. After the dissolution Murff conveyed to Hayes his interest in the said lot, the consideration being the agreement on the part of Hayes to assume and pay off all of the debts of the concern. On the 23d day of February, 1897, Hayes & Murff gave their note to the National Bank of Greenville to secure an advance of $1,000. In order to secure this note, they executed to the bank a mortgage on the storehouse and lot. The mortgage was in the usual form, and signed by A. M. Hayes, W. H. Murff, and Hayes & Murff. When this mortgage became due, the bank took from Murff a mortgage on his individual property, and assigned to him the note and mortgage. After the dissolution of the partnership of Hayes & Murff, and after Murff had conveyed his interest in the business and in the storehouse and lot to Hayes, Hayes negotiated a loan of $1,000 from Henry T. Stroud. By arrangement had with Murff, in order to secure this loan, Murff, at the instance of, and with the knowledge and consent of, Hayes, assigned the note and mortgage above described to Henry T. Stroud. Thereafter the partnership of Hayes & Murff and A. M. Hayes were declared bankrupts. Stroud sought to prove his mortgage before the referee as a lien upon the property described therein. The referee held:

"(1) That when the bank assigned the note and mortgage to Murff, under the circumstances, they became thereby paid and extinguished; (2) that, in any event, Stroud could not set up the note and mortgage as against the creditors of the firm of Hayes & Murff."

This decision of the referee was on the 13th of March, 1900, and two days thereafter was certified to the district court for review. On May 23d the district court decided the questions presented, overruling the referee, and holding that H. T. Stroud had a lien upon the proceeds of the real estate for the payment of the note dated January 27, 1897, but had no lien on the proceeds of the sale of the merchandise of Hayes & Murff, etc. On June 2d other creditors filed a petition for appeal, and on the same day an order was passed allowing the appeal. Assignment of errors was also filed on June 2d. On the 16th day of July, 44 days after the decision by the district court, an affidavit of H. J. Haynsworth, one of the petitioning creditors, was filed, setting forth, without giving dates, that in the interim between the decree and the date of the affidavit the trustee had declined to allow the use of his name in the appeal, and the district judge entered an order (July 16th) "that the appeal heretofore taken * * * be continued in the name of J. A. McDaniel,

trustee, in connection with said creditors, and that the record be amended accordingly." "Said creditors, or some of them, however, are to file a bond of two hundred and fifty dollars, conditioned to pay the costs of appeal within thirty days." A motion to dismiss the appeal was entered, and this is the question presented first for the consideration of the court.

Section 25a of the bankruptcy act provides for appeals from a judgment allowing or rejecting a claim of $500 or over, and limits the time within which such appeal shall be taken to 10 days; and section 31 how this time shall be computed. Unless taken within 10 days, the right of appeal is lost. Being a statutory limitation, it cannot be extended, even by the court, except by consent of parties, and certainly not after the time has expired. The words, "such appeal shall be taken within ten days," are mandatory if an appeal is taken, and used in their legal, technical sense. An appeal cannot be taken until such papers are filed as devest the court which rendered the judgment or entered the decree of jurisdiction over the subject-matter. Appeals in bankruptcy, being thus regulated by statute, must be taken stricti juris. The supreme court, Justice Bradley delivering the opinion, in Credit Co. v. Arkansas Cent. Ry. Co., 128 U. S. 259, 9 Sup. Ct. 107, 32 L. Ed. 448, says:

"An appeal cannot be said to be 'taken,' any more than a writ of error can be said to be brought, until it is in some way presented to the court which made the decree appealed from, thereby putting an end to its jurisdiction over the cause, and making it its duty to send it to the appellate court. This is done by filing the papers, viz. the petition and allowance of appeal (when there is such petition and allowance), the appeal bond and the citation." "When the time for taking an appeal has expired it cannot be arrested or called back by a simple order of court. If it could be, the law which limits the time within which an appeal can be taken would be a dead letter."

Farrar v. Churchill, 135 U. S. 613, 10 Sup. Ct. 771, 34 L. Ed. 246, was a cross appeal; petition, order, and bond not filed within two years; dismissed. Green v. City of Lynn, 31 C. C. A. 248, 87 Fed. 839 (per curiam opinion), held the filing of petition and assignment of errors within the statutory period not sufficient. In re Goodman, 42 C. C. A. 85, 101 Fed. 920 (per curiam opinion), held an appeal is not taken until the order allowing the same and the bond are filed in the court in which the decree or order appealed from is entered, and this must be done within the time allowed by statute for taking an appeal. Authorities to the same effect are abundant. Bankr. Act, § 25, and general order 36 of the supreme court, make the rules in equity applicable to all proceedings on appeal applicable to causes in bankruptcy. It was, under the rule (section 31), exactly 10 days from the day the district court entered the decree (May 23d) to the day on which (June 2d) a creditor filed a petition for appeal and assignment of errors. This constituted an appeal or it did not. If the appeal was then "taken," it devested the district court of jurisdiction, and the order of July 16th was void. If it was not taken, the right of appeal was lost on that day, and the district court could not, by a nunc pro tunc order 44 days thereafter, revive the right of appeal. In either view of the case, the order of July 16th was of no force. It is some evidence that counsel and the district judge both

thought the appeal had not been taken that the former asked for and the latter passed the order. The case at bar, therefore, should be considered without regard to this order.

Was the appeal taken on the 2d of June? The appeal bond was filed on August 11, 1900, and the citation issued August 16, 1900, and served August 21, 1900. None of these acts, essential to taking an appeal, were within 10 days of the rendering of the judgment by the district court.

As the appeal should be dismissed, it is not necessary to consider the question, argued on the hearing, of the right of a single creditor to appeal from a judgment allowing or rejecting a claim against a bankrupt estate, or whether such right of appeal is vested solely in the trustee as the representative of all the creditors whose claims have been proved and allowed. In my opinion, the appeal should be dismissed.