### In re WALDEN BROS. CLOTHING CO.

#### (District Court, N. D. Georgia, W. D.    August 29, 1912.)

#### No. 533.

1. BANKRUPTCY (§ 446*)—REFEREE'S FINDINGS—REVIEW.

    Findings by a referee in bankruptcy on questions of fact will not be disturbed, unless clearly and manifestly erroneous.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 446.*

    Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 178*)—PREFERENCES—FRAUDULENT MORTGAGE.

    Where a bankrupt, with knowledge of insolvency, mortgaged its entire stock of goods and pledged its choses in action for a large loan secured by a demand note, and used the proceeds to pay three creditors, leaving a considerable number unprotected, and the lender had reasonable grounds for suspicion that the transfer was made with intent to delay the bankrupt's other creditors, it was invalid, under Code Ga. 1910, § 3224, providing that every conveyance made with intention to delay or defraud creditors, known to the party taking the same, or in case the latter shall have ground for reasonable suspicion thereof, shall be fraudulent and void against creditors, and was therefore unsustainable in bankruptcy.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274, 283, 284; Dec. Dig. § 178.*]

In Bankruptcy. In the matter of the Walden Bros. Clothing Company. On objections to proof of the claim of F. G. Lumpkin as a secured and preferred creditor. Sustained.

T. Leslie Bowden and Henry R. Goetchius, both of Columbus, Ga., for claimant.

Slade & Swift, Love & Fort, and Dismukes & Worsley, all of Columbus, Ga., for trustee.

NEWMAN, District Judge. This is a petition to review the action of the referee in refusing to allow a mortgage held by Frank G. Lumpkin, in the above-stated case, to be proven as a preferred debt against the bankrupt's estate.

[1] We must start into the consideration of the case with the rule in mind that the action of the referee and his findings on questions of fact will not be disturbed, unless clearly and manifestly erroneous. This has been held to be the rule in this court in many cases. Fouche v. Shearer, 172 Fed. 592; Re Landsberger, 177 Fed. 450; Re Taff & Conyers, 182 Fed. 904; Re Waxelbaum, 101 Fed. 228; Re West, 116 Fed. 767. But such is the rule recognized generally by the courts. Ohio Valley Trust Co. v. Mack (C. C. A.; Lurton, J.) 163 Fed. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184. The same effect is given to it as to a finding of a master in chancery.

The opportunity a referee has for seeing the witnesses and observing their manner and conduct on the stand makes his opinion particularly valuable; and this is especially true in cases like this, where the issue is knowledge, lack of knowledge, and opportunity for knowledge. The referee sees a witness, and, observing his examination and cross-examination, and his manner on the stand, gets a far better idea of the truth of a particular matter than a reviewing court from a written or printed record.

The referee has found that, at the time of the execution of the mortgage in question, Walden Bros. Clothing Company was insolvent. There is no doubt whatever, from the evidence, that he was fully justified in this finding. Any fair view of the evidence as to the value of the stock of merchandise on hand, and the accounts and notes due the company, contrasted with the admitted indebtedness, makes it clearly insolvent.

[2] At the time the mortgage was executed, was it made on the part of the bankrupt company with intent to hinder, delay, or defraud creditors? It must be conceded that there was a clear intent to delay the creditors, to say no more of it. Mortgaging its entire stock of merchandise, and pledging its choses in action, and then using the money received from the mortgage to pay three creditors, leaving a considerable number of its creditors wholly unprotected, could only have been with the knowledge that the latter class of creditors would be hindered and delayed, at least, in the collection of their debts. It must have intended that which it knew would occur. This is sufficient to bring the case within the statute. Bankr. Act July 1, 1898, c. 541, § 67c, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3419).

Really the only question in the case is whether or not Mr. Lumpkin had reasonable grounds for suspicion that by the execution of this mortgage the bankrupt company intended to hinder, delay, or defraud its creditors. Were the facts and circumstances of the case, and sur-

rounding the transaction, such as to put him on notice that such was the purpose of the Walden Bros. Clothing Company? Section 3224 of the Code of Georgia of 1910 provides as follows:

"The following acts by debtors shall be fraudulent in law, against creditors and others and as to them, null and void, viz.:

"1. Every assignment, or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of, or in behalf of, creditors, where any trust or benefit is reserved to the assignor, or any person for him.

"2. Every conveyance of real or personal estate by writing or otherwise, and every bond, suit, judgment and execution or contract of any description had, or made with intention to delay or defraud creditors and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.

"3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance."

It will be seen from this that a person taking a transfer in such a case must be without "grounds for reasonable suspicion that the same was intended to delay or defraud creditors." In Nicol v. Crittenden, 55 Ga. 497, the Supreme Court of Georgia, through Judge Bleckley, says this:

"We hold that the court erred in charging the jury that the purchaser would be protected against the fraudulent intent of the seller unless that intent was known to him. The Code, in section 1952, expressly prescribes another condition, which is that he should be without grounds for a reasonable suspicion. And this element of invalidity was much more involved in the facts of the case than was the element of actual knowledge. The jury ought to have passed upon it, and this they were precluded from doing by the charge as given. It is impossible that the case can be fully and legally tried without scrutinizing the grounds of suspicion which the claimant may have had, and which the plaintiffs contend he did have. The jury, besides dealing with the other issue in this case, should be directed to inquire whether the debtor intended to delay or defraud creditors, and, if so, whether the claimant purchased on a valuable consideration and without notice or grounds for reasonable suspicion."

Applying this law to the bankruptcy law, what is the result? Section 67e of the Bankrupt Act is as follows:

"That all conveyances, transfers, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose, on his part, to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liable for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise, for the benefit of the creditors. And all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the law of the state, territory, or district in which said property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee [trustee] and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

I do not regard the case of Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, as applicable here, even if it has the meaning claimed for it by counsel for the mortgagee, because it leaves out of the question entirely consideration of the effect of a transfer void under the laws of the state in which the property is situated. Here counsel for the trustee put their case entirely on the law of Georgia. Their contention is that the mortgage is clearly void under the law of the state.

I would be unwilling to sustain the action of the referee, if in so doing it was necessary to hold that Mr. Lumpkin was guilty of any actual fraud or intentional wrong, because I do not believe that is shown by the proof. But that the referee correctly applied the law of Georgia, and had sufficient evidence to justify him in holding as he did, I do believe; and it is wholly unnecessary to hold that there was any actual fraud or any intentional wrong on the part of Mr. Lumpkin in this case. All that it is necessary to determine, and all that is determined, is that the facts are such as to justify the referee in finding them sufficient to put Mr. Lumpkin upon inquiry, that reasonable inquiry would have informed him of the intention of the bankrupt company at least to delay creditors, and that in failing to make such inquiry he was guilty of such negligence as to make this conveyance void.

In other words, the facts surrounding this transaction at the time Mr. Lumpkin took the mortgage gave grounds for reasonable suspicion of the bankrupt company's intent. He must have known that this company, by conveying all its property of every kind to him to secure a note payable on demand, put themselves out of business, so far as the mercantile world was concerned; and, having this knowledge, I think the referee was justified in finding that he should have gone further and inquired as to what was the purpose of the company in making this large loan and incumbering all its property. Certainly no court would be justified in holding that there was clear and manifest error on the part of the referee in so finding.

It is unnecessary, in the view above taken of this case, to determine whether the execution of this mortgage was a proper corporate act. It seems to be very doubtful whether there was the proper meeting and proper action by the corporation before the execution of the mortgage, authorizing the same; but, as stated, it is unnecessary to determine that.

The action of the referee is approved.